UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATHAN ANGELO MCGILL,

        Petitioner,

    v.

CONNIE GIPSON,

        Respondent.

Case No.  13-cv-03317-JD

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Re: Dkt. No. 14

      This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court. Petitioner filed a reply. The petition is denied.

**BACKGROUND**

      After a jury trial, petitioner was found guilty of murder and robbery. *People v. McGill*, No. A129485, 2012 WL 151738, at *1 (Cal. Ct. App. Jan. 19, 2012). The trial court found that petitioner had prior serious felony and strike allegations and sentenced him to a term of 62 years to life in state prison. *Id*. The California Court of Appeal affirmed the conviction. *Id*. at 4. Petitions to the California Court of Appeal and California Supreme Court were denied. Resp. Exs. 6, 9-12.

      The California Court of Appeal summarized the facts of the crime as follows:

        The murder was of longtime methamphetamine dealer Jody Reynolds at his trailer home on semi-rural property in Santa Rosa on January 20, 2009. Reynolds was beaten and shot twice, with different guns, during a robbery carried out by Felix Alvarado and Ernest Cassidy, William Hammack, and McGill. All were originally charged, as well as Eric Duran, a customer of Reynolds who set up Reynolds and directed the perpetrators to where Reynolds lived. Duran avoided a possible life term for murder through a plea agreement under which he agreed to testify against the others, and

McGill was tried here on an information amended to include just the charges against him.

Evidence tying McGill to the planning and execution of the robbery/murder included: his arrival with the other three at Hammack's place by car just afterward, wearing a face mask; talk there in the presence of Duran about what happened; Duran splitting stolen drugs five ways; McGill threatening Duran, while holding a gun, that he would be dead if he said anything; a duffle bag with guns in it, including a revolver likely used to shoot the dealer, found in the house where McGill lived; and his DNA being found on a magazine with the guns. This appeal, however, focuses on statements McGill made to Detective Chris Vivian in two interviews, a day apart, at the Sonoma County Sheriff's Investigation Bureau, after McGill's arrest about a week after the crimes.

In those interviews, McGill was talkative, after *Miranda* warnings, and admitted being part of the planning for what was supposed to be just a robbery. In the course of the five and a half hours of the first interview (from about 5:30 to 11:00 p.m., he painted himself as a veteran (40 years old) who was anxious about the others' inexperience, showed them how to do it, wrote it down for them, had them practice at his house, and specifically warned them against shooting the dealer-that it was "a red light." He told who was involved, what happened at the shooting, that four guns were used, which ones he provided or fixed for them, but consistently in the first interview, denied being there. He said there were five perpetrators and named four, including Duran in their number, but denied being the fifth and never gave a fifth name. He said he was going to do it but backed off when he got "the red light" from his "people" about the dealer. Still, the others were "my boys," he said, so he had to "make sure they're doing shit right." He said it was "destined to go bad," but, "If I was there, this wouldn't a happened. Only toward the end of the second interview, which ran some three hours from 9:00 p.m., did McGill admit being there. He said he stayed outside the house until he heard shots fired, then was angry and "ready to shoot them all."

*McGill*, 2012 WL 151738, at *1-2.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual

determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). The federal court presumes the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). When confronted with such a decision, a

1   federal court should conduct an independent review of the record to determine whether the state

2   court's decision was an objectively unreasonable application of clearly established federal law.

3   *Himes*, 336 F.3d at 853; *Delgado*, 223 F.3d at 982.

## DISCUSSION

5   As grounds for federal habeas relief, petitioner asserts that: (1) trial counsel was ineffective

6   for failing to challenge the admission of his statement as involuntary; and (2) the trial court erred

7   in admitting his statement.

8   **I.    INEFFECTIVE ASSISTANCE OF COUNSEL**

9   Trial counsel argued that petitioner's confession was obtained in violation of *Miranda v.*

10   *Arizona*, 384 U.S. 436 (1966), but the trial court rejected this claim.  Petitioner now asserts that

11   trial counsel was ineffective for failing to challenge the confession as involuntary due to false

12   promises of leniency made during the interview.

13   **A.    Legal Standard**

14   A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

15   Amendment right to counsel, which guarantees not only assistance, but effective assistance of

16   counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on a Sixth Amendment

17   ineffectiveness of counsel claim, petitioner must satisfy two requirements.  He must establish that

18   counsel's performance was deficient, which means that it fell below an "objective standard of

19   reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687-88.  He must

20   also establish that he was prejudiced by counsel's deficient performance, which means that "there

21   is a reasonable probability that, but for counsel's unprofessional errors, the result of the

22   proceeding would have been different."  *Id*. at 694.  "A reasonable probability is a probability

23   sufficient to undermine confidence in the outcome."  *Id*.

24   Involuntary confessions in state criminal cases are inadmissible under the Fourteenth

25   Amendment.  *Blackburn v. Alabama*, 361 U.S. 199, 207 (1960).  The voluntariness of a confession

26   is evaluated by reviewing both the police conduct in extracting the statements and the effect of that

27   conduct on the suspect.  *Miller v. Fenton*, 474 U.S. 104, 116 (1985); *Henry v. Kernan*, 197 F.3d

28   1021, 1026 (9th Cir. 1999).  To determine the voluntariness of a confession, the court must

United States District Court
Northern District of California

consider the effect that the totality of the circumstances had upon the will of the defendant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). In determining whether the defendant's will was overborne by the circumstances surrounding the giving of the confession, the inquiry "'takes into consideration the totality of all the surrounding circumstance - *both* the characteristics of the accused *and* the details of the interrogation.'" *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (en banc) (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)).

Encouraging a suspect to tell the truth is not coercion. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir. 1997), *overruled on other grounds by Preston*, 751 F.3d at 1019-20. Nor is it coercive to recite potential penalties or sentences, including the potential penalties for lying to the interviewer. No holding of the Supreme Court "suggests, much less clearly establishes, that police may not urge a suspect to confess before another suspect does so." *Bobby v. Dixon*, 132 S. Ct. 26, 29-30 (2011). Thus, a police officer's urging a suspect to "cut a deal" before his accomplice does so does not make the resulting statement by the suspect involuntary. *Id.*

## B.     Analysis

Because this claim was denied without a reasoned opinion by the state courts, this Court has undertaken an independent review of the record. *Delgado*, 223 F.3d at 982. Petitioner argues that the detective who interviewed him promised greater leniency if he confessed involvement in the crime, and that his trial counsel was ineffective for failing to raise this issue. The Court has reviewed the transcript of the interview and finds that petitioner's confession was voluntary and the detective did not make any improper offers of leniency.

Petitioner points to several instances where the detective noted that the victim was not meant to be killed; rather, the assailants were there simply to rob him, and petitioner was not the shooter. Clerk's Transcript Volume 2 ("CT2") at 41, 63, 67, 92. Petitioner also cites to the detective's statements that "only the people that didn't pull the trigger can be saved, that's it," Clerk's Transcript Volume 3 ("CT3") at 62, and "[t]here's only so many seats on a lifeboat," CT3 at 64. Petitioner contends that the detective's commenting about the differences between premeditated murder and robbery and the lifeboat description were inducements for petitioner to admit his presence at the crime. Petition at 29. Petitioner concedes there were no specific

5

1   promises. *Id*.

2          A review of the interviews demonstrates that the detective specifically stated several times

3   that he could not make any promises. The detective stated, "I'm not goona bullshit ya, Nate, I'm

4   not - I can't make you promises, I'm not gonna make you promises . . . . I'm not gonna, uh, make

5   you deals . . . . The district attorney's office does that." CT3 at 11-12.  The detective later added,

6   "I don't make deals, I don't have all my evidence in yet . . . this is early on . . . and a lot of

7   decisions – decisions are made early on . . . ." CT3 at 12.  The detective also cautioned petitioner

8   that the victim was shot and killed so "we're talking [life without the possibility of parole], you

9   know?" CT3 at 13.  The detective stated he knew petitioner was present during the crime, and told

10  petitioner, "Only the truth is going to save you . . . ." CT3 at 61-62.  He also told petitioner , "I'm

11  not making you any promises. . . . I mean, I called the DA at home, I let him know what's going

12  on . . . okay, I make no promises." CT3 at 62.

13          Looking to the totality of the circumstances there is no indication that petitioner's will was

14  overborne by the circumstances surrounding his statement.  The detective was extremely clear that

15  he could not make any promises of leniency and that it was a serious crime that would involve a

16  great deal of prison time.  Suggestions that cooperation could be beneficial do not render

17  petitioner's confession involuntary. *See Cunningham v. City of Wenatchee*, 345 F.3d 802, 810-11

18  (9th Cir. 2003) (officer did not undermine plaintiff's free will where interrogation lasted for eight

19  hours, officer did not refuse to give break for food and water, and officer suggested cooperation

20  could lead to treatment rather than prison); *United States v. Okafor*, 285 F.3d 842, 846-47 (9th Cir.

21  2002) (customs agent's statements to defendant that he would be subject to 10-20 years in prison

22  and it would be to his benefit to cooperate with authorities, as well as customs agent's statement

23  that he would let the government know if defendant cooperated, did not render subsequent

24  confession involuntary).

25          Nor does petitioner present any other evidence that his statement was involuntary.  He was

26  forty years old at the time of the crime and had several previous convictions, which demonstrate

27  familiarity with the criminal justice system. *See Fare v. Michael C.*, 442 U.S. 707, 725 (1979)

28  (age and experience of suspect relevant when determining whether confession or waiver of rights

United States District Court
Northern District of California

6

was voluntary); *Doody v. Ryan*, 649 F.3d 986, 1008-09 (9th Cir. 2011) (en banc) (suspect's age may be taken into account in determining whether a confession was voluntary).  He was also provided food and drink when requested and was allowed to rest.  *McGill*, 2012 WL 151738, at *3.  Because petitioner's confession was voluntary, he has failed to show that trial counsel was deficient for failing to challenge the confession or that he suffered prejudice as a result.  This claim is denied.

## II.    ADMISSION OF STATEMENT

Petitioner also argues that the trial court erred because his statement should have been excluded as involuntary.

### A.    Analysis

At trial petitioner challenged the admission of the statement as a *Miranda* violation.  The first time that the statement was challenged as involuntary due to promises of leniency was on appeal.  The California Court of Appeal found that petitioner forfeited this claim by failing to object on this basis at trial.  *McGill*, 2012 WL 151738, at *4.  Respondent argues that this claim is therefore procedurally defaulted.  While the claim does appear procedurally defaulted the Court will still look to the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (in the interests of judicial economy, federal courts may address an allegedly defaulted habeas claim on the merits if the issue on the claim's merits is clear).

The Court has found that petitioner's statement was not involuntary due to promises of leniency and trial counsel was not ineffective for failing to raise the claim.  For these same reasons the trial court did not err in failing to exclude the statement.

Even assuming the trial court did err, petitioner is not entitled to relief.  The erroneous admission of a coerced confession is subject to harmless error analysis.  *Arizona v. Fulminante*, 499 U.S. 279, 306-12 (1991).  Habeas relief is appropriate only if the coerced confession had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Pope v. Zenon*, 69 F.3d 1018, 1025 (9th Cir. 1995) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)), *overruled on other grounds*.  There was a great deal of evidence implicating petitioner other than his statements to police.  One of the perpetrators testified against petitioner and incriminated him.

1   Physical evidence was found at petitioner's house, and his DNA was found on one of the gun

2   magazines.  Petitioner has failed to show that the his confession was involuntary or that the

3   admission of it had a substantial and injurious effect on the jury verdict.  This claim is denied.

4   **III.       CERTIFICATE OF APPEALABILITY**

5       1.      The petition for writ of habeas corpus is **DENIED** on the merits.  A certificate of

6   appealability will not issue.  See 28 U.S.C. § 2253(c).  This is not a case in which "reasonable

7   jurists would find the district court's assessment of the constitutional claims debatable or wrong."

8   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The Clerk shall enter judgment in favor of

9   respondent and close the file

10      2.      Petitioner's motion for an extension to file a traverse (Docket No. 14) is

11   **GRANTED** and the Court has considered the filing.

12       **IT IS SO ORDERED**.

13   Dated:  December 29, 2014

14   _____

15   JAMES DONATO
     United States District Judge

United States District Court
Northern District of California

1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7    NATHAN ANGELO MCGILL,                    Case No.  13-cv-03317-JD
                    Plaintiff,
8
9          v.                                 **CERTIFICATE OF SERVICE**
10   CONNIE GIPSON,
                    Defendant.
11
12         I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S.
     District Court, Northern District of California.
13
14         That on 12/29/2014, I SERVED a true and correct copy(ies) of the attached, by placing
     said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by
15   depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery
     receptacle located in the Clerk's office.
16
17   Nathan Angelo McGill ID: AE3141
     California State Prison - Sacramento
18   P.O. Box 290066
     Represa, CA 95671-0066
19
20
21   Dated: 12/29/2014
22
23                                            Richard W. Wieking
                                              Clerk, United States District Court
24
25
26                                            By:_ *Lisa R. Clark* _____
                                              LISA R. CLARK, Deputy Clerk to the
27                                            Honorable JAMES DONATO
28